**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **JOHNATHAN ALLEN WHEELER,** : | |
| : | |
| **Plaintiff,** : | |
| **VS.** : | **CIV. NO. 5:22-CV-00403-MTT-CHW** |
| : | |
| **WARDEN JOSEPH POLITE,** *et al.*, : | |
| : | |
| **Defendants.** : | |
| _____ : | |

<u>**ORDER AND RECOMMENDATION**</u>

In accordance with the Court's previous orders and instructions, *pro se* Plaintiff Johnathan Allen Wheeler, an inmate currently incarcerated at the Georgia Diagnostic and Classification Prison ("GDCP") in Jackson, Georgia, has described his efforts to have prison officials deduct the appropriate filing fee from his prison trust fund account. *See, e.g.,* Resp. 1, Mar. 1, 2023, ECF No. 12. The Court finds that circumstances beyond Plaintiff's control have prohibited him from paying the fee and thus declines to recommend dismissal for failure to pay the fee.

Plaintiff's Complaint is now ripe for review pursuant to 28 U.S.C. § 1915A. Having conducted such review, it is found that the following claims arising out of Plaintiff's 2021 incarceration in the D-Wing of the Special Management Unit at GDCP shall proceed for further factual development, as discussed in more detail below: (1) Defendant Brown failed to provide Plaintiff with adequate mental health treatment; (2) Defendants Clupper, Williams, Davis, and Johnson used excessive force against Plaintiff; and (3) Defendants Clupper, Williams, and Johnson failed to provide Plaintiff adequate medical treatment for

the injuries suffered in the alleged excessive force incidents.  It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice.**  Plaintiff's motion for reimbursement (ECF No. 11) is **DENIED.**

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

### I.    Standard of Review

The Prison Litigation Reform Act ("PLRA") obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee.  *See* 28 U.S.C. § 1915A(a).  When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).  *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Id.* (internal quotation marks omitted).  Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact."  *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted).  The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless."  *Id.* (internal quotation marks omitted).  A complaint fails to state a claim if it does not include "sufficient factual matter,

2

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.   Factual Allegations and Plaintiff's Claims

Plaintiff's claims arise from his treatment in the Special Management Unit ("SMU") at the Georgia Diagnostic and Classification Prison in Jackson, Georgia. Compl. 5, ECF No. 1. As discussed in more detail below, Plaintiff contends that all Defendants violated his constitutional rights in some way. To remedy these alleged constitutional violations, Plaintiff primarily seeks monetary damages. Attach. 1 to Compl. 15, ECF No. 1-1.

3

### 1. Unrelated Claims

As a preliminary matter, Plaintiff's Complaint names more than twenty individual Defendants and describes incidents that occurred in three different wings of the SMU during three separate time periods between February of 2021 and June of 2022.  First, from February of 2021 through December of 2021, Plaintiff was assigned to the D-Wing of the SMU.   Attach. 1 to Compl. 3-4, ECF No. 1-1.  During this time, he contends he was not permitted to contact his attorney.  *Id.*  In addition, Plaintiff alleges he was not receiving adequate mental health treatment.  *Id.*  Plaintiff contends that Defendants retaliated against him for complaining about these issues, and he also suggests that the lack of mental health care caused conflicts between Plaintiff and prison staff.   Plaintiff specifically describes several incidents in which Defendants used excessive force against him.  *See id.* at 5.  Plaintiff mentions Defendants Brown, Williams, Ball, Polite, Clupper, Johnson, Davis, Green, Thomas, Aarons, and Hargrove in connection with these alleged constitutional violations.

Second, Plaintiff contends that in April of 2022, he was moved from the D-Wing of the SMU to the E-Wing, where he was placed in a cell that had "ventilation, air, drain, and toilet issues."  Attach. 1 to Compl. 9, ECF No. 1-1.  Plaintiff contends excessive force was used against him when he complained about these issues, he did not receive medical treatment for the injuries suffered when Defendants used excessive force against him, and prison staff failed to repair his cell.  *Id.* at 9-10.  Plaintiff also alleges that Defendants denied him food, hygiene, clothing, property, and cleaning supplies and subjected him to "inhumane, cruel and unusual, and torturous conditions . . . for absolutely no reason."  *Id.*

at 10-11.  Plaintiff mentions Defendants Wellmaker, Williams, Turner, Murray, McCullen, Barber, Polite, Ball, Robinson, and Greene in connection with these claims.

Finally, Plaintiff alleges that in June of 2022 in the F-Wing of the SMU, Plaintiff began taking a "new mental health medication, and he wasn't feeling right" but "nothing was done."  Attach. 1 to Compl. 12, ECF No. 1-1.  After several hours with no assistance, Plaintiff "had a mental episode" that led to an altercation with prison officials in which Plaintiff contends Defendants used excessive force.  *Id.* at 12-13.  These claims primarily involve Defendants Wellmaker, Dotsun, Turner, Joseph, and Aarons.  *Id.*

The Federal Rules of Civil Procedure permit a plaintiff to join only related claims and defendants in a single complaint.  To properly join defendants under Federal Rule of Civil Procedure 20(a)(2), the plaintiff must establish that he is asserting a right to relief against them "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and that "any question of law or fact common to all defendants will arise in the action."  The Eleventh Circuit applies the "logical relationship" test to determine whether claims arise from the same transaction or occurrence for joinder purposes.  *See, e.g., Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic Health Corp. v. Lifemark Hosp. Corp. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)).[1]  "Under this test, there is a logical relationship when the same operative facts serve as the basis of both claims

---

[1]The standard for whether claims arise from the same transaction or occurrence for Rule 20 purposes is the same as that used for compulsory counterclaims under Federal Rule of Civil Procedure 13.  *See Smith*, 728 F. Supp. 2d at 1319.

or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Republic Health Corp.*, 755 F.2d at 1455 (internal quotation marks omitted). In exercising its discretion regarding joinder, the Court should "provide a reasoned analysis that comports with the requirements of the Rule" and "based on the specific fact pattern presented by the plaintiffs and claims before the court." *Hagan v. Rogers*, 570 F.3d 146, 157 (3d Cir. 2009). The Court's discretion is also informed by the PLRA and its goals of preventing unwieldy litigation, ensuring the payment of filing fees, and limiting prisoners' ability to bring frivolous cases. *See, e.g., George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff has not pleaded facts sufficient to establish that all his claims are logically related to one another, nor has he identified any question of law or fact that is common to all Defendants. Plaintiff's claims in this case do not rest on the same operative facts. While all the incidents occurred in the SMU, they occurred in different wings of the SMU during different time periods, and each set of claims involves largely different Defendants and theories of recovery. The Eleventh Circuit has held that more than just a minimal connection between a series of different transactions or occurrences must exist before joinder is proper. *Skillern v. Ga. Dep't of Corr. Comm'r*, 379 F. App'x 859, 860 (11th Cir. 2010) (per curiam) (holding that prisoner failed to demonstrate that claims against defendants arose out of the same transaction, occurrence, or series of transactions or occurrences where the only "connection between the people and events [the prisoner] described" was that the actions "showed indifference to his failing health"); *see also State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416–17 (10th Cir. 1984)

(affirming denial of joinder where allegations against proposed defendant were "only tangentially related to the issues and series of transactions" in the pending case because "[d]ifferent elements of proof are required for the proposed cause of action, involving different questions of fact and law").  Plaintiff has therefore failed to show that his claims bear any logical relationship to one another for purposes of Rule 20.  Because joinder is thus inappropriate, and because it does not appear that the statute of limitations would bar Plaintiff from refiling his claims concerning the April and June 2022 incidents if he acts promptly to do so, these claims should be dismissed without prejudice.  *See* Fed. R. Civ. P. 21; *see also DirecTV, Inc. v. Leto*, 467 F.3d 842, 844-45 (3d Cir. 2006) (holding that "district judges have discretion to remedy misjoinders either by severing claims or dismissing them without prejudice").[2]

### 2.   Mental Health Treatment Claims

Turning to Plaintiff's 2021 claims, Plaintiff first contends that he did not receive appropriate mental health treatment in the SMU.  Jail officials who are deliberately indifferent to a prisoner's serious medical needs—including mental health needs—can violate the Eighth Amendment.  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry."  *Farrow*, 320 F.3d at 1243.  A plaintiff must first "set forth evidence of an objectively serious medical need" and

---

[2] Because these claims would be dismissed without prejudice, Plaintiff may refile his claims if he desires.  The Clerk is **DIRECTED** to furnish Plaintiff with two copies of the Court's standard § 1983 form that Plaintiff may use for this purpose.

must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.*  In other words, prison officials must both "know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam).  For purposes of this analysis, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted).

Plaintiff contends that while he was assigned to the D-Wing, he repeatedly "requested to speak to a psychologist, or to be evaluated," but "nothing was ever done to help [him] with his issues" over a sixteen-month period.  Attach. 1 to Compl. 3, ECF No. 1.  As a result, Plaintiff contends that he was involved in "several confrontations, incidents, and mental health episodes." *Id.*; *see also id.* at 5 (alleging that Plaintiff had "a visible mental break down" in October of 2021).  Plaintiff specifically contends he sought help directly from "Mental Health Counselor Brown and every M/H/C that walked by his cell[.]" *Id.* at 3.  Plaintiff further alleges that "sometimes weeks went by without any mental health counselors even coming into the dorm." *Id.*

Although Plaintiff does not provide the Court with a particular mental health diagnosis, it may be inferred from the Complaint that Plaintiff suffers from serious medical needs related to his mental health condition, that he sought assistance directly from Defendant Brown, and that Defendant Brown did not provide any treatment to Plaintiff for

more than a year.[3]  At this early stage of the litigation, the Court therefore cannot conclude that Plaintiff's claim that Defendant Brown was deliberately indifferent to his serious mental health needs is frivolous.  This claim shall therefore proceed for further factual development.

### 3.  Attorney Contact Claims

Plaintiff next contends that Defendants in the SMU failed to permit him to contact his attorney "with case sensitive information."  Attach. 1 to Compl. 3-4, ECF No. 1. Plaintiff states that when he requested to contact his attorney, "everyone said 'no' or have your family call your attorney and schedule a visit or call."  *Id.*  Plaintiff may be attempting to base this claim on his First Amendment right to communicate with individuals outside the prison.  *See, e.g., Pope v. Hightower*, 101 F.3d 1382, 1384 (11th Cir. 1996).  This right, however, is not absolute; even though "prison inmates retain a right under the First Amendment to send and receive information while incarcerated they do not have a

---

[3] Plaintiff states that he spoke to "every M/H/C that walked by his cell," that he has "documentation and grievances to prove his continuous attempts to seek help," and that Defendant Thomas, a "TACH/IRT" guard, noticed that Plaintiff was "'going through it.'"  Attach. 1 to Compl. 3, 5, ECF No. 1-1.  But the only mental health professional he specifically mentions in connection with this claim is Defendant Brown, and Plaintiff fails to explain which other named Defendants received or evaluated his complaints or grievances concerning his need for mental health treatment.  Plaintiff has therefore failed to sufficiently allege that any other named Defendants subjectively knew Plaintiff required mental health treatment that he was not actually receiving. *See, e.g., Kuhne v. Fla. Dep't Corr.*, 618 F. App'x 498, 507 (11th Cir. 2015) (per curiam) (holding that "when a layperson is accused of deliberate indifference, the plaintiff must present[] evidence that her situation was so obviously dire that two lay [officers] must have known that a medical professional had grossly misjudged [the plaintiff's] condition" (internal quotation marks omitted) (alterations in original)); *see also Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (holding that two defendants who were not medical professionals could not be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor").

constitutional right to a particular form of communication[.]" *Edwards v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2019 WL 1978803, at *5 (N.D.N.Y. May 3, 2019) (internal citations omitted). A prison therefore does not necessarily violate the Constitution by failing to ensure that an inmate has access to his preferred method of communication. *See, e.g., Holt v. Bright*, No. 4:19CV01438, 2020 WL 224575, at *3 (N.D. Ohio Jan. 15, 2020) ("[W]hile prisoners have a First Amendment right to communicate with the outside world, they do not have a constitutional right to a particular form of communication, such as access to email or telephone.").

In this case, Plaintiff has not alleged how, specifically, Defendants have deprived him of the ability to contact his attorney. It does not appear—nor does Plaintiff allege— that he is unable to reach his attorney via mail, for example. At most, the Complaint suggests Defendants may have simply denied Plaintiff of the ability to communicate with his attorney via Plaintiff's preferred method. Absent more specific facts concerning this alleged deprivation of communication, Plaintiff has failed to state an actionable First Amendment claim, and any such claim should be dismissed without prejudice.

To the extent Plaintiff is contending that denial of access to his attorney amounted to a denial of access to the courts, he has likewise failed to state a constitutional claim. "Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002)). "To have standing to seek relief under this right, however, a plaintiff must show actual injury by 'demonstrat[ing] that a

nonfrivolous legal claim ha[s] been frustrated or . . . impeded.'" *Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 797 (11th Cir. 2003) (alterations and omission in original) (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).  In other words, "[t]he injury requirement means that the plaintiff must have an underlying cause of action the vindication of which is prevented by the denial of access to the courts." *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1271 (11th Cir. 2010).  Plaintiff has not alleged that the alleged denial of access to his attorney has frustrated or impeded any nonfrivolous legal claim.  Finally, Plaintiff's attorney contact claims are not sufficiently related to his mental health treatment claims to be joined in a single action under Rule 20. As such, any access-to-courts claim he is attempting to assert should also be dismissed without prejudice.

### 4.  Excessive Force Claims

Next, Plaintiff contends that certain Defendants used excessive and unnecessary force against him in 2021 while he was in the D-Wing of the SMU.  Force that is applied to a prisoner "maliciously and sadistically to cause harm" can violate the Eighth Amendment and give rise to claims under § 1983. *See, e.g., Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002).

Plaintiff describes several incidents that he contends amount to excessive force. First, Plaintiff states that Defendant Clupper pepper-sprayed him in the face and upper torso multiple times and left Plaintiff in his cell "for hours without medical attention." Attach. 1 to Compl. 4, ECF No. 1-1.  During this incident, Plaintiff also "begged" for Defendant Williams to provide him with medical attention, but Defendant Williams waited

several hours before providing Plaintiff with assistance. *Id.* While it is unclear whether Defendant Clupper's initial use of pepper spray was justified, failing to allow an inmate to decontaminate after being sprayed can constitute excessive force. *See, e.g., Nasseri v. City of Athens*, 373 F. App'x 15, 19 (11th Cir. 2010) (per curiam) (holding that the "continued confinement of [detainee] in an unventilated patrol car without decontamination constituted excessive force"). Plaintiff's excessive force claims against Defendants Clupper and Williams shall therefore proceed for further factual development.

Second, Plaintiff contends Defendant Davis "choked [him] with his hands" while Plaintiff's "hands were cuffed behind his back." *Id.* This is sufficient at this early stage to state an actionable Eighth Amendment claim against Defendant Davis. *Cf. Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (holding that officer who punched handcuffed arrestee who was not struggling or resisting used excessive force because "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force").

Third, Plaintiff contends that in October 2021, he got into "a tussle" with Defendant Thomas while Defendant Thomas was escorting Plaintiff back to his cell from the kiosk. Attach. 1 to Compl. 5, ECF No. 1-1. During this incident, Plaintiff was subdued by multiple TACH squad members and was lying on his stomach with his hands cuffed behind his back. *Id.* At this time, unknown individuals struck Plaintiff in the head with a can of pepper spray, kneed him in the head, sprayed him in the face at "point blank range," and shot him in the thigh with a taser. *Id.* Plaintiff further contends that he was escorted to medical where an unidentified individual apparently inserted pepper spray into his anus.

12

*Id.* at 5-6.  Plaintiff also states that Defendant Johnson again refused to allow Plaintiff to properly decontaminate and directed officers to return Plaintiff to his cell, "leaving him to burn all weekend."  *Id.* at 7.  When Plaintiff received medical attention on the following Monday, he was informed that he had a ruptured ear canal and possibly a fractured jaw. *Id.*  At least some of these allegations could certainly give rise to actionable claims.  *See, e.g., Sconiers v. Lockhart*, 946 F.3d 1256, 1267 (11th Cir. 2020) (holding that allegation that prison guard "sadistically and maliciously forced his finger into [prisoner's] anus" constituted Eighth Amendment violation because such action was "severe sexual abuse of a prisoner").  But with the exception of his claim that Defendant Johnson did not permit him to decontaminate, it is not clear which individuals were involved in this incident. Plaintiff's excessive force claim against Defendant Johnson may therefore proceed for further factual development, but his remaining claims based on the October 2021 incident should be dismissed without prejudice.  *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation).[4]

### 5.  Inadequate Medical Treatment Claims

Next, Plaintiff contends prison officials failed to provide him with adequate medical care for the injuries he suffered when Defendants allegedly used excessive force against him on the D-Wing in 2021.  As noted above, a prisoner who demonstrates that a prison

---

[4] Plaintiff may move for leave to amend his Complaint in accordance with the Federal Rules of Civil Procedure to include any other individuals who allegedly assaulted Plaintiff if discovery reveals the identity of those individuals.

official was deliberately indifferent to his serious medical needs can state a claim under the Eighth Amendment.  *Farrow*, 320 F.3d at 1243 (11th Cir. 2003).  Plaintiff again mentions several incidents that could constitute deliberate indifference to his serious medical needs.

First, Plaintiff contends that Defendants Clupper, Williams, and Johnson denied him adequate medical treatment by ignoring Plaintiff's requests for medical attention after Plaintiff was pepper-sprayed in the face and torso by Defendant Clupper.  Attach. 1 to Compl. 4, ECF No. 1-1.  The Court cannot say that these claims are entirely frivolous.  *See Nasseri*, 373 F. App'x at 20 (inmate stated deliberate indifference claim against jail official who "ignored without plausible explanation [inmate's] known exposure to pepper spray").  These claims shall therefore proceed against Defendants Clupper, Williams, and Johnson.

Plaintiff also suggests that Defendant Johnson did not provide Plaintiff with adequate medical treatment for the injuries Plaintiff suffered in the October 2021 incident.  Attach. 1 to Compl. 6, ECF No. 1-1.  Plaintiff appears to contend that Defendant Johnson failed to permit him to decontaminate sufficiently and did not provide him adequate treatment for the injury to his ear on the day of the injury.  Although Defendant Johnson allowed Plaintiff to wash the pepper spray from his eyes and pointed a fan at Plaintiff "to help sooth the burning from the spray," Plaintiff also alleges that Defendant Johnson directed prison officials to return Plaintiff to his cell without further treatment even though Plaintiff was still complaining that "he was still unable to see" and that he was in enough pain that he "begged to go to the hospital."  *Id.* at 6-7.  When Plaintiff returned to medical several days later, Defendant Johnson "had to flush [Plaintiff's] eyes again because there was so much spray in his eyes," and he also determined that Plaintiff had a "ruptured ear

canal" and "possibly a fractured jaw." *Id.* at 7.  Given these facts (which the Court must take as true at this early stage), the Court cannot say that Plaintiff's claims that Defendant Johnson did not provide him with adequate medical treatment on the day of the October 2021 incident are entirely frivolous.  These claims shall also proceed for further factual development.

### 6.  *Personal Property Claims*

Plaintiff next alleges that his personal property "was thrown from the hallway to the table and floors of D-Wing."  Attach. 1 to Compl. 7, ECF No. 1-1.  It is unclear whether Plaintiff is contending that Defendants destroyed this property or otherwise failed to return some of it to him.  To the extent Plaintiff is alleging that Defendants violated his due process rights by depriving him of his property, however, he has failed to state an actionable claim.  Even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  "Georgia provides a civil cause of action for the wrongful conversion of personal property."  *Moore v. McLaughlin*, 569 F. App'x 656, 658 (11th Cir. 2014) (per curiam) (citing O.C.G.A. § 51-10-1).  The Eleventh Circuit has "held that this cause of action constitutes a suitable postdeprivation remedy for procedural due process violations."  *Id.*  Plaintiff has not alleged that he has attempted to pursue a civil action based on Defendants' actions or that such a remedy is not available to him.  Thus, any claims regarding the seizure or destruction of Plaintiff's personal property should also be dismissed.

### 7.  Supervisory Liability Claims

Plaintiff also names several high-ranking prison officials as Defendants in this case. Although it does not appear these individuals directly participated in any alleged constitutional violations, Plaintiff may be attempting to sue these individuals in their supervisory capacities.  It is well-settled in the Eleventh Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.  *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).   Rather, supervisors who did not personally participate in unconstitutional conduct can only be held liable under § 1983 if there is a causal connection between their actions and the alleged constitutional violation.  *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam).   A causal connection can be established if

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.*  "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous."  *Id.* (internal quotation marks omitted).

In this case, Plaintiff has failed to allege any basis for holding any supervisors liable for any constitutional violations in this case.  Plaintiff's description of his own experience in the SMU is not enough to show a history of widespread abuse.  *See, e.g., Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) ("The deprivations that constitute

widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."); *see also Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988) (holding that "[a] single incident, or isolated incidents, do not ordinarily satisfy th[e] burden" of proving a supervisory liability claim). Plaintiff has also failed to describe any improper custom or policy put in place by any of the named supervisory Defendants, nor does he allege that any of these Defendants directed their subordinates violate Plaintiff's rights or knew they would do so and failed to stop them.  As such, any supervisory liability claims against Defendants related to the 2021 incidents that occurred in the D-Wing of the SMU are subject to dismissal.

### 8. *Retaliation Claims*

Plaintiff next alleges that his requests to contact his attorneys and/or for mental health treatment "result[ed] in vendictive [sic], malicious punishments, and excessive forces being used" against him.  Attach. 1 to Compl. 4, ECF No. 1-1; *see also id.* at 14.  It is well-established that an adverse action imposed in retaliation for a prisoner's exercise of a constitutionally protected right is actionable.  *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam).  To prove a retaliation claim, an inmate generally needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action.  *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).  But a prisoner's "unsupported conclusory assertion about a retaliatory motive is not enough to state a plausible claim for relief."  *Leonard v. Monroe Cnty., Fla.*, 789 F. App'x 848, 850-51 (11th Cir. 2019) (per curiam).

17

Plaintiff in this case has failed to allege any specific facts that would support his conclusory statement that any named Defendant took an adverse action against Plaintiff because Plaintiff sought mental health treatment or asked to contact his attorney. This lack of factual detail makes it impossible for the Court to conclude that Plaintiff was retaliated against because he exercised his First Amendment rights. *See Allen v. St. John*, 827 F. App'x 1002, 1007 (11th Cir. 2020) (per curiam) (holding that prisoner's "retaliation claim was properly dismissed for lack of supporting facts" where the claim "contain[ed] only the conclusory assertion that [the prisoner] was retaliated against, and that is not enough to state a claim upon which relief may be granted"); *Taylor v. Nix*, 240 F. App'x 830, 837 (11th Cir. 2007) (per curiam) (holding that prisoner's "conclusory allegations" that failed to "provide a time-frame as to when" prisoner engaged in protected conduct were insufficient to establish retaliation). As currently pleaded, Plaintiff's retaliation claims are therefore too vague and conclusory to state an actionable claim, and they should be dismissed without prejudice.

### 9. Grievance Claims

Finally, Plaintiff appears to allege that Defendants did not properly handle his grievances concerning the 2021 use-of-force incidents. Plaintiff states that his PREA grievance "was acknowledged" and various individuals gave statements, but "nothing was ever done about the excessive force and PREA, or medical grievances." Attach. 1 to Compl. 8, ECF No. 1-1. Plaintiff also appears to complain that he was not afforded sufficient privacy during his PREA interview with his mental health counselors and that he should not have had his picture taken "for the use of force paperwork." *Id.* at 8-9. But

Plaintiff does not have any due process right to access a prison's grievance procedure or have those procedures properly followed. *See, e.g., Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (per curiam) (affirming dismissal of prison's claims that he was denied use of the prison's grievance procedure); *Dunn v. Martin*, 178 F. App'x 876, 878 (11th Cir. 2006) (per curiam) (prison officials' failure to respond to prisoner's letters and grievances and to follow prison regulations regarding grievance responses did not implicate due process concerns). Plaintiff has thus failed to state a constitutional claim against Defendants concerning the handling of his grievances, and any such claims should be dismissed without prejudice.

### III.    Motion for Reimbursement of Funds

Plaintiff has also filed a document he titles, "Motion for Re-Embursement Do [sic] to the Court's Error" (ECF No. 11). In this motion, Plaintiff explains that the Court inadvertently included an order from a different case with the documents mailed to Plaintiff on February 1, 2023. Because Plaintiff mailed these documents back to the Court along with his motion for reimbursement, he "request[s] re-embursement [sic] of $500.65 (five hundred and sixty five cents) for the postage, envelope, and his personal time invested in writing, and preparing this motion." Mot. Reimbursement 1-2, ECF No. 11. Plaintiff has not cited to any authority for the proposition that he is entitled to reimbursement under these circumstances. As such, Plaintiff's motion (ECF No. 11) is **DENIED.**

### IV.    Conclusion

In accordance with the foregoing, the following claims related to Plaintiff's 2021 incarceration in the D-Wing of the Special Management Unit at GDCP shall proceed for

further factual development: (1) Defendant Brown failed to provide Plaintiff with adequate mental health treatment; (2) Defendants Clupper, Williams, Davis, and Johnson used excessive force against Plaintiff; and (3) Defendants Clupper, Williams, and Johnson failed to provide Plaintiff adequate medical treatment for the injuries suffered in the alleged excessive force incidents.  It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice.**  Plaintiff's motion for reimbursement (ECF No. 11) is **DENIED.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, Chief United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.  Any objection is limited in length to **TWENTY (20) PAGES**.  *See* M.D. Ga. L.R. 7.4.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.  Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Brown, Clupper, Williams, Davis, and Johnson, it is accordingly **ORDERED** that service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison

Litigation Reform Act.  Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.  Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party

to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff.  The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a

trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 23rd day of March, 2023.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge